Staples, J.,
delivered the opinion of the court.
At common law payment utterly extinguishes the debt and every security given for it. A surety who makes such payment becomes thereby only a simple contract creditor of the principal debtor. Courts of equity, however, interpose to keep alive the debt for the benefit of the surety. In these courts he is subrogated to all the rights and remedies of the creditor, and entitled to enforce all his liens, priorities and means of payment. The doctrine of subrogation does not stand upon contract, express or implied, but upon principles of natural justice. As it is purely a creature of equity it is only enforced in those cases where its application is just, and sanctioned by the obligations of good faith and sound policy. 1 Lead. Cases in Equity 88.
And further, it is only enforced in behalf of sureties and others who are required to pay in order to protect *742 their own interests, and never in favor of mere volunteers. In the Bank of the United States v. Winston, 2 Brock. R. 254, Judge Marshall said, “there was no case in which the doctrine of subrogation has been enforced in favor of one not bound by the original contract who discharged it as a volunteer. He would not say it might not be done; but if it may, equity will consider all the circumstances and impose equity ble terms.”
We are now to consider whether consistently with these principles a sheriff having executions in his hands and paying them to the creditor is entitled, without an assignment of the debt, to be subrogated to the lien of such creditor upon the real estate of the debtor, as against other subsequent j udgment creditors. The question is one of the first impression in this state. It has never been passed upon by this court, and the books show but few cases upon the subject in other states. It must therefore be determined exclusively upon principle.
In the first place, it is the duty of a sheriff having an execution in his hands, to collect the money, or to levy and sell, and pay the proceeds into court or to the plaintiff; and further, to make prompt return of the execution. If the defendant has no effects upon which a levy can be made, the officer should return the process with a statement of the facts. This is .the precept of the writ, and the command of the law. If the sheriff fails to levy in a proper case, or having levied, fails to sell without a sufficient cause, he is liable to a fine, and to make good to the creditor- the amount of the debt. This liability, however, does not arise out of any supposed relation of principal and surety between the sheriff and the debtor in the execution. It is the mere consequence of official miscon *743 duct. It is the penalty imposed by the law for a plain breach of duty.
It has been held in a number of cases, that an charged with the collection of moneys due individuals or the government, who pays the taxes or debt of another person, cannot maintain an action to recover the same in the absence of a prior request or a subsequent promise. Kidder v. Townsend, 3 John. R. 430; Beach v. Vandenburgh, 10 John. R. 369; Overseers of Wallkill v. Overseers of Manmakating, 14 John. R. 87.
In Lipscomb’s adm’r v. Winston adm’r of Littlepage, 1 Hen. & Mun. 453, this court held, that a sheriff having indulged a man for his taxes, on paying the same into the treasury in his behalf, might recover the amount with interest; but this was upon an express promise of indemnity. This decision was made by two judges in a court of three; and not without a vehement protest from Judge Tucker, who declared that a contract more flagrantly in maleficio never was brought brought to the view of the court.
It is very clear, that if the sheriff stands in the relalation of surety to the delinquent debtor, it is perfectly competent for him to pay the money to the creditor, and without a prior request or subsequent promise, to maintain an action against the person for whom the payment is made. A surety may, at any time, voluntarily pay the debt after it is due; and he is at once entitled to his action. These considerations are sufficient to show the wide distinction between one who assumes a liability for another by contract, and him whose liability flows from a breach of official duty.
It has already been seen that the failure to levy and sell in a proper case is a violation of the official bond, as well as of the precept of the writ. It is. a wrong to the plaintiff in the execution, to other creditors of *744 the debtor, and to the public who are interested in the just aQd proper discharge of official trusts. Such into the debtor is often not only an injury to him and hi's creditors, but its tendency is to involve the sureties of the sheriff in expensive and sometimes ruinous litigation. It leads to the diversion of funds in the hands of the officer from their proper destination, for the purpose of dispensing favors and indulgencies to those whom he desires' to befriend or conciliate.
Whilst the debtor’s property is ostensibly subject to the lien of the execution held by the sheriff, it is permitted to remain in the possession of the debtor, subject to his control, and thus effectually protected against the claims of other creditors. When the debtor’s personal effects are properly applied to the satisfaction of the older judgments, the' subsequent judgment creditor may successfully assert his lien upon the land. But if the debtor is permitted through the indulgence or the connivance of the sheriff, to consume or dispose of his goods and chattels-, and the sheriff is then allowed to stand in the shoes of the prior creditor and enforce his liens upon the land, it is obvious that in a large majority of cases the junior creditor will be the sufferer.
When an execution is satisfied, it is the duty of the officer to make return according to the fact. Parties dealing with the debtor upon the faith of such return, may justly conclude that the lien of the judgment and execution has been fully discharged. To permit the sheriff at any future period to enforce such lien in the face of his own return, against other creditors, is to encourage official delinquency by according to it a superior equity.
Such are but a small part of the evils resulting from *745 the doctrine of subrogation when applied to sheriffs and other officers charged with the collection of debts. So far as my investigation has extended, it has met with but little favor by the courts. In the People v. Onondaga, 19 Wend. R. 79, the sheriff levied upon personal property sufficient to satisfy the execution, but left it in the possesion of the defendant. The latter having eloined the property, the sheriff was compelled to pay the debt. He thereupon procured an assignment of the judgment. The supreme court of New York was of opinion that the sheriff was entitled to be subrogated in the place of the creditor as against the debtor, but not as against purchasers of his real estate on subsequent judgments and executions. (It seems that these creditors were the purchasers at the sales made for their benefit.) The court says that although the debtor subtracted the property before the subsequent judgment creditors got their judgments, the levy by the sheriff might well have induced them to suppose the first judgment was satisfied, and led them on in their own suits to expense and trouble. # 0 All this was very likely in consequence of the neglect of Luther the sheriff.”
It will be perceived that the supreme court o.f New York denied to the sheriff the right of subrogation as against creditors and purchasers, although he had obtained an assignment of the judgment. Without controverting the justice of this decision in the particular case, it would seem very clear that the sheriff by obtaining from the creditor an assignment of his judgment, would necessarily be entitled, as assignee, to all his liens and priorities. The sheriff has the same right of purchasing the debt that others have; •and such purchase necessarily carries with it all the remedies for its enforcement to which the assignor *746 was entitled. When, therefore, the officer becomes assignee of the judgment, and makes a true and per-return of the execution, he is entitled to the lien, anfl n0 ^justice is done to creditors or purchasers,
The learned counsel for the appellee concedes, that . . where the sheriff is compelled to satisfy the debt in consequence of his own default in levying and selling, he cannot maintain an action for the recovery of the money; nor is he entitled to a right of subrogation. He insists, however, that in this case there was no such default, because the debtor owned no personal property out of which the executions could have been made. If such was the fact—if the debtor had no effects upon which a levy could be made, it was the officer’s duty to-return the executions. He was certainly under no obligation to pay them. It is incredible that a sheriff' under such circumstances, would voluntarily assume-the payment of debts to the amount of a thousand dollars or more, for which he was in no manner liable. The just inference is, that he made the payments because he well knew he had by his default become responsible to the creditors. Both the sheriff' and the-execution debtor were examined in this case, and-neither of them intimated that the executions could not have been made out of the debtor’s property. On the contrary, it may be fairly inferred from the testimony, that the failure to do so proceeded either from negligence on the part of the sheriff, or an indisposition to levy and sell. We do not mean to intimate that the result would be different even if the facts-were as stated by the learned counsel. It is sufficient to say, that his suggestions are not sustained by the-evidence.
In considering this case we have not deemed it - necessary to notice particularly the testimony adduced *747 by the parties. There are but two witnesses, the appellee and the debtor. Their testimony is so conflicting that no safe conclusion can be drawn from it. have thought it best to rest our decision upon certain well-defined principles, with a view to some general rule for the adjudication of future controversies of a like character. The result is that the decree of the circuit court must be reversed, and a decree entered in conformity with the views herein expressed.
The decree was as follows:
This day came again the parties by their counsel, and the court having maturely considered the transcript of the record of the decree aforesaid, and the arguments of counsel, is of opinion, for reasons stated in writing and filed with the record, that a sheriff or other officer who pays an execution in his hands for collection, without an assignment at the time of such judgment or the debt, is not entitled to be subrogated to the lien of the creditor whose debt he has paid, as against other creditors having liens by judgment or otherwise. The circuit court therefore erred in holding, that the appellee had a right of subrogation in this case to the lien of the judgment creditors whose executions had been paid by him without having obtained an assignment or transfer of the judgments or the debts secured thereby. It is therefore decreed and ordered that for this error the decree of the circuit court be reversed and annulled; and that the appellee pay to the appellants their costs by them expended in the prosecution of their appeal aforesaid here. And this court proceeding to pronounce such decree as the said circuit court ought to have pronounced, it is decreed and ordered, that the first exception taken by the *748 creditors Clevinger, Keckley, and the National Bank of Martinsburg to the report of commissioner Huck, be sustained, except as to the judgment in favor of Y. P. Watkins, of which the appellee being an assignee, is entititled to subrogation to the judgment lien of said Watkins. It is further decreed and ordered that this cause be remanded to the circuit court to be proceeded with in conformity with the principles herein declared.
Which is ordered -to be certified to the said circuit court of Frederick county.
Decree reversed.